FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2016 MAY 12  AM 9: 53

CLERK_____
SO. DIST OF GA.

### UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
|  | ) |
| v. | ) CR 416-153 |
|  | ) |
| CHELSEA MAGEE, | ) |
|  | ) |
| Defendant | ) |

### GOVERNMENT'S MOTION FOR DETERMINATION OF MENTAL COMPETENCY TO STAND TRIAL

COMES NOW, the United States Attorney for the Southern District of Georgia, by and through the undersigned Assistant United States Attorney, and respectfully files this motion pursuant to 18 U.S.C. § 4241 for a hearing to determine the mental competency of the Defendant to stand trial. In support of this motion, the Government shows the following:

### INTRODUCTION

At approximately 7:00a.m. on April 18, 2016, the defendant entered the Savannah Chatham Metropolitan Police Department ("SCMPD") Precinct Five and made a missing boater report, claiming that her husband, Cody Magee, had gone on a kayaking trip on Tybee Island the night before and failed to return. On the following day, however, the defendant admitted to SCMPD and U.S. Coast Guard Investigative Service ("CGIS") investigators that she assisted her husband in orchestrating his staged disappearance to avoid facing pending state charges.

At times during her interview at the SCMPD police barracks on April 19, the defendant displayed unusual behavior. For instance, in the midst of an otherwise serious conversation about her husband's whereabouts, the defendant suddenly inquired of investigators, "So when did you know you wanted to solve mysteries?" She laughed at inappropriate times, and shared bits of information such as, "I was raped as a child," or words to that effect. When asked whether her husband might have plans to harm himself, the defendant declared, "Oh, no; I'm the suicidal one." When pressed to reveal what she knew about her husband's plan to flee from prosecution, the defendant claimed she had fibromyalgia, and that "fibromyalgia fog" made it difficult for her to concentrate and remember things.[1]

On May 4, 2016, a grand jury sitting in the Southern District of Georgia returned a one-count Indictment charging the defendant and Cody Magee with Causing the U.S. Coast Guard to Attempt to Save Lives Where No Help is Needed, in violation of 14 U.S.C. § 88(c). Doc. 3. The defendant was arrested on a federal warrant at approximately 9:30a.m. on May 9, 2016. During her ensuing transport to the federal courthouse, the defendant made disconcerting statements in the presence of Special Agent David Thirkettle, CGIS, such as "Can you just go ahead and shoot me in the head?" and "Maybe I can just get someone to stab me," or words to that effect.

SA Thirkettle brought the defendant before this Court for an Initial

---

[1] On or about April 23, 2016, four days after her interview with law enforcement, the defendant sent her neighbor a multimedia message via cell phone that stated, "Look it's a disorder which I'm pretty sure I have." Attached to the text was a screenshot of a Wikipedia entry describing "Fragmentation of Memory. . . a memory disorder in which the patient is unable to attach memories to specific locations or times." Att. A.

Appearance at 2p.m. on May 9, 2016. Doc. 9. Prior to the defendant's initial appearance, she submitted to an interview with U.S. Probation Officer Ervin Frazier. When asked about her mental health history, the defendant averred that she had been diagnosed with Borderline Personality Disorder, Depression, Anxiety, Attention Deficit Disorder, Suicidal Ideations, a previous suicide attempt, and Pseudo-seizures.[2] She also announced that if given the opportunity at that moment, she would commit suicide. The defendant claimed to have taken no medication for her mental health conditions for over four years, nor sought any mental health treatment, but she did claim a previous addiction to prescription opiates. Based primarily on the defendant's statements about her intent to harm herself, the Government moved for a mental health evaluation. Doc. 9.

When the Court inquired further of the defendant about her mental health conditions and how they came to be diagnosed, the defendant admitted that she inferred the diagnoses from comments made by her son's mental health practitioner during some of her son's appointments years earlier. The defendant acknowledged, however, that she had never actually been a patient of this psychologist. The previous suicide attempt, according to the defendant, consisted of the defendant putting a gun to her head during an argument with her husband, but then deciding not to harm herself, after all. No police, paramedics, doctors or counselors were ever informed of the so-called attempt. As for her announced intention to commit suicide at the first available opportunity, the defendant explained that she would be

---

[2] Although the condition of "pseudo-seizures," also known as "psychogenic seizures" was listed in the U.S. Probation Bond Report as a physical ailment, it appears to be a psychological condition that is often mistaken for – but is not caused by - epilepsy. http://www.psych.theclinics.com/article/S0193-953X(05)70029-0/abstract.

less likely to harm herself if she could be at home with her family.[3]

At the conclusion of the hearing, the Court orally granted the Government's motion and announced its intent to send the defendant, in the custody of the U.S. Marshal, to a Bureau of Prisons facility where she would be evaluated to determine whether she posed an ongoing threat of danger to herself.  Doc. 9.  Prior to the defendant's departure from the Southern District of Georgia, however, two things of significance transpired.  First, late in the day on May 10, 2016, SA David Thirkettle reviewed an audiotaped phone call between the defendant and her husband, who was incarcerated in the Oklahoma City County Jail.  SA Thirkettle discovered that on or about April 25, 2016, the defendant engaged in the following conversation with Cody Magee:

### 02 Magee 912-272-9402 04-25-16 1237 Jail call

[START 1:42]

CHELSEA:  So, how are you doing?

CODY:      I got moved into a different floor which is more for high – high violent
              criminals.

CHELSEA:  Seriously?

CODY:      Yep.

CHELSEA:  Why?

---

[3] Undersigned counsel noticed what appeared to be inappropriate attention and affect on the part of the defendant in the courtroom prior to the start of the hearing.  After Deputy Marshals escorted the defendant to counsel table and removed her handcuffs, the defendant gazed around the room, rested her eyes on a safe installed high on the rear wall of the courtroom, and in a flirtatious tone of voice, pointed it out and inquired, "What's that?  What is that for?"  In her interactions with the Court during the hearing, the defendant alternated between giggling and crying.  At times she would lean forward and casually lean on counsel table with her arms straight out and her palms on the table.  At other times she would wrap her arms around herself and shake.  It is unclear whether this behavior was a manifestation of a mental or physical ailment, or whether this was a conscious attempt to put on an act for the Court and counsel.

CODY:       Probably because of my charges.

CHELSEA:   [*Laughs.*] Tell 'em you're gonna commit suicide.

CODY:       What's that?

CHELSEA:   I said, tell them you're gonna commit suicide.  They'll have to move you
           out of there.

CODY:       I know.

CHELSEA:   No, seriously.  Use the system.

CODY:       I'm just waiting to see how this expedition works.  I mean, supposedly
           they have ten business days to come pick me up or else I get released.

[END 2:15]

. . . .

[START 11:33]

CHELSEA:   So, why exactly did you - did they move you down to general
           population?

CODY:       Well, I'm in – I'm on – I'm – before I was in classification.  That's just a
           level they put you in while they're figuring out what level to put you in.
           Now I'm on eight, which is your murderer, thieves, and drug dealers,
           and [IA].

CHELSEA:   Fine, so you're with murders, thieves, drug dealers.  Yeah, because
           you've committed rape.  That's exactly what they're treating you like –
           like you've actually went and committed the child molestation, rape –
           whatever.

CODY:       I know.  You –

CHELSEA:   That's ridiculous.  You need to tell them that you're going to commit
           suicide or something.  So that they are forced to move you out of
           general population.  Otherwise, you might get killed, Cody.

CODY:       Well, then you will get the insurance.

CHELSEA:   I don't think that they're going to give me the insurance.

CODY:     Well, if I get killed now?  Yeah.

CHELSEA:  I doubt it.

[END 12:31]

Second, on May 11, 2016, the Court appointed defense counsel to represent the defendant and scheduled an arraignment and detention hearing for May 12, 2016. Docs. 12-13.

 The Government maintains its motion for a mental health evaluation of the defendant to assess whether she presents an ongoing danger to herself and – apart from any suicidal tendencies – whether she can assist properly in her defense.  The Government respectfully requests that the Court order a psychiatric or psychological examination, and that a report be filed with the Court, pursuant to the provisions of 18 U.S.C. §§ 4241(b), 4242(a)[4], and 4247(b) and (c).

## ARGUMENT AND CITATION OF AUTHORITY

 Due process categorically prohibits subjecting a defendant who is mentally incompetent to a criminal trial.  Drope v. Missouri, 420 U.S. 162, 171-72 (1975). The Supreme Court has set the legal standard for mental competency in the trial portion of the criminal process.  A defendant is mentally incompetent to stand trial if she suffers from a mental disease or effect which impairs her (1) "sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding," or leaves her lacking (2) a "rational as well as factual

---

[4] Absent any objection by the defendant, the government requests an examination to determine the defendant's sanity at the time of the offense pursuant to 18 U.S.C. § 4242 in the interests of economy and efficiency and  in anticipation of an insanity defense at trial.

understanding" of both the charges against her and the nature of the judicial proceedings. <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960) (per curiam). A defendant must satisfy both prongs in order to be mentally competent to stand trial. The <u>Dusky</u> standard was codified at 18 U.S.C. § 4241(a), which provides that an individual is mentally incompetent to stand trial if she suffers from a mental disease or defect which makes her (1) unable to understand the nature and consequences of the legal proceedings against her; or (2) unable to assist properly in her defense. Unlike the affirmative insanity defense, mental competence is a present issue, focused on whether the defendant is mentally competent at the time of trial.

In this case, the Government's concern lay with the second prong of Section 4241(a), in that there is reasonable cause to believe that the defendant may be suffering from a mental disease or defect rendering her incapable of assisting properly in her defense. Some of the mental conditions the defendant claims, such as "fibromyalgia fog" and "pseudoseizures" are apparently associated with dissociative states, amnesia, inability to focus, confusion, poor understanding and poor recall.[5]  Moreover, it is unclear whether the defendant truly harbors a present intent to take her own life, as she has so emphatically stated, or whether she is – as her recorded conversation might suggest – merely attempting to manipulate the court system in her favor.  To release the defendant without a professional assessment opinion on the issue of her propensity for self-harm would, in the

---

[5] http://www.psych.theclinics.com/article/S0193-953X(05)70029-0/abstract (pseudoseizures); http://www.nfra.net/fibromyalgia-fibro-fog.htm (fibromyalgia fog); http://www.mayoclinic.org/diseases-conditions/fibromyalgia/basics/symptoms/con-20019243 (fibromyalgia fog).

Government's opinion, unduly risk the defendant's safety.

Additionally, while the defendant has not filed notice pursuant to Fed.R.Crim.P. 12.2 of her intent to rely on the defense of insanity, the government anticipates such a possibility and will – if necessary at a later time – move for an examination pursuant to 18 U.S.C. § 4242(a) to determine the defendant's sanity at the time of the offense. Absent an objection from the defendant, however, and in the interest of economy, the government respectfully requests that the Court order such an examination pursuant to Section 4242(a) during and in conjunction with any examination ordered pursuant to Section 4241.

## CONCLUSION

WHEREFORE, the Government prays this Court grant the Government's motion for Determination of Competency to Stand Trial, and (absent defense objection) order an examination and hearing to determine the defendant's sanity at the time of the offense.

This 12th day of May, 2016.

Respectfully submitted,

EDWARD J. TARVER
UNITED STATES ATTORNEY

Jennifer G. Solari
Assistant United States Attorney
District of Columbia Bar No. 987167

Post Office Box 8970
Savannah, Georgia 31412
Telephone: (912) 201-2561
Facsimile: (912) 652-4388

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served defense counsel, Amit Navare, a hard copy of this motion via hand delivery prior to the scheduled arraignment and detention hearing at 9:00a.m.  I have also provided a hard copy of the motion to the Court for its consideration.

Submitted this 12th day of May, 2016.

EDWARD J. TARVER
UNITED STATES ATTORNEY

Jennifer G. Solari
Assistant United States Attorney
District of Columbia Bar No. 987167

Post Office Box 8970
Savannah, Georgia 31412
Telephone: (912) 201-2561
Facsimile: (912) 652-4388
E-mail: jennifer.solari@usdoj.gov

# Attachment A

| To: | " Chelsea (+19122729402) |
|---|---|
| Attachments: | facebook_1461427295805.jpg<br>MD5: EE6994EB84B4C5913D3760F2330B1BDE<br>SHA256: 7CA72D7F68E11B9BAC0B56E0241EE91E684465504850C457AD28CE837461D254 |
| **#15** | |

**Folder: Inbox | Status: Read | Timestamp: 23/04/2016 11:41:00 (GMT-4) | Priority: Normal**

| From: | " Chelsea (19122729402) |
|---|---|
| Attachments: | Screenshot_2016-04-23-11-40-201.png<br>MD5: 72C8A4649BD52A2B6D9D2E036FE003D6<br>SHA256: 3508195DE28DFC2C11DA5276989C65239E2DC80F6551FB1A55CACE84495C2557 |
| Body: | Actually I wouldn't be surprised if cody had this. |
| **#16** | |

**Folder: Inbox | Status: Read | Timestamp: 23/04/2016 11:38:32 (GMT-4) | Priority: Normal**

| From: | " Chelsea (19122729402) |
|---|---|
| Attachments: | Screenshot_2016-04-23-11-37-521.png<br>MD5: A6F8866A6209D45B1B27E15C61BB6266<br>SHA256: 687392C2BE61F0319C11A56E3FAE05FD8EB99FFF27B15A3319EB6ACD23FD23E7 |
| Body: | Look it's a disorder which I'm pretty sure I have. |
| **#17** | |

**Folder: Sent | Status: Sent | Timestamp: 23/04/2016 11:02:02 (GMT-4) | Priority: Normal**

| To: | * Chelsea (9122729402) |
|---|---|
| Attachments: | Snapchat-6577435608352872731.jpeg<br>MD5: 46C5F813CBE3052802EC2E1566FC303D<br>SHA256: CBB2073FDF945ABD122C1E941BF43C0C0A656EC3F58C3393AB2EF5BB84BCBC6A |
| Body: | Just like his daddy lol |
| **#18** | |

**Folder: Sent | Status: Sent | Timestamp: 22/04/2016 19:16:49 (GMT-4) | Priority: Normal**

| To: | " Chelsea (9122729402) |
|---|---|
| Attachments: | Resized_Screenshot_20160422-191623.jpeg<br>MD5: 2CE96A2BBC3D30947E48168D8FA202C1<br>SHA256: 417B3ACFF7258D62ECC444840662DA763DCFFD09B0442FE0FED58EB3A24DF4F8 |
| **#19** | |

**Folder: Sent | Status: Sent | Timestamp: 21/04/2016 22:06:54 (GMT-4) | Priority: Normal**

| To: | " Chelsea (9122729402) |
|---|---|
| Attachments: | Screenshot_20160421-220532.jpg<br>MD5: 2A47651F11CB7105C27C36F3D2E06BC3<br>SHA256: ADE334D4FB6AD1677D564BCF933B96677FD764CA4F1E3012A2F9B93D372333B8<br>; Screenshot_20160421-220617.jpg<br>MD5: 1B583B8CE143C5C9A52BF946BEEFD92B<br>SHA256: 31E2358DA5C8AF1B5C636B96B6E7E84638A10B1D0C2FEAF39EEBFDED670D241B |





# Fragmentation of memory





Page issues

**Fragmentation of memory** is a memory disorder in which the patient is unable to attach memories to specific locations or times. The impaired person can remember events, but cannot pinpoint when the events happened, either absolutely or in relation to other events. This can occur even for relatively recent events.

The impaired person usually suffers from physical damage to or underdevelopment of the hippocampus. This may be due to a genetic disorder, or be the result of trauma, such as post-traumatic stress disorder.[1] Brain dysfunction often has other related consequences, such as oversensitivity to some stimuli, impulsiveness, lack of direction